IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

SCOTTY'S RECYCLING, LLC                                                          PLAINTIFF

v.                                                         CIVIL ACTION NO. 3:11cv341-DPJ-FKB

PHILADELPHIA-SECURITY                                                          DEFENDANTS
INSURANCE, et al.

ORDER

This removed case is before the Court on Plaintiff's Motion to Remand [161]. Because the Court concludes that Plaintiff has no reasonable possibility of recovery against the non-diverse defendants, Plaintiff's motion is denied.

I.      Facts and Procedural History

In March 2007, Scotty Vowell contacted his insurance agent, Cathy Copeland at Philadelphia-Security Insurance ("PSI"), about procuring worker's compensation insurance coverage for his limited-liability company, Scotty's Recycling, LLC ("Scotty's"). PSI procured coverage from American Home Assurance Co. for the policy period running April 2007 to April 2008 and from New Hampshire Insurance Company for the policy period from April 2008 to April 2009. Each policy, at its inception, required Scotty's to pay an estimated annual premium and contained a provision for determinating the final premium once the policy terminated:

> The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance.

Defs.' Resp. [164] Ex. S, American Home Policy, at 20; *id.* Ex. D, New Hampshire Policy, at 24.

After the American Home policy expired in April 2008, American Home conducted an audit and discovered that Scotty's payroll for the policy period was greater than initially estimated. American Home recalculated the premium based on its audit and billed Scotty's for the additional sum. New Hampshire then learned of the audit and likewise issued an adjusted premium endorsement for the 2008–2009 policy and invoiced Scotty's for the balance. In an August 13, 2008 letter, Vowell disputed the results of the American Home audit and its effect on the premiums for both policies but, "[a]s a gesture of good faith[,]" paid "$5,000 towards [the] balance due on the 2007–2008 audit . . . and will await the outcome of this dispute before paying any remaining balance due the company."[1] Defs.' Resp. [164] Ex. I, Vowell Letter.

Scotty's made no payments on the disputed balance due on the New Hampshire policy, despite the fact that New Hampshire mailed invoices to Scotty's in September and October 2008. The invoices stated that if Scotty's failed to make payments, "your policy will be subject to cancellation." Defs.' Resp. [164] Ex. K, Invoices. Vowell's wife, Nita, who was responsible for opening Scotty's mail and paying the bills, testified that she received the invoices from New Hampshire but did not pay the premiums because she believed her husband had moved Scotty's workers-compensation coverage. Defs.' Resp. [164] Ex. B, Nita Vowell Dep. 21–22. Having received no further premiums on the policy, New Hampshire mailed a Notice of Cancellation of Policy to Scotty's via registered mail on November 5, 2008. The notice explained that the New Hampshire policy "will cease on" December 12, 2008, and that "[t]he reason for cancellation is non-payment of premium." Defs.' Resp. [164] Ex. E, Notice. On December 21, 2008, New Hampshire mailed Scotty's an endorsement cancelling the coverage effective December 12,

---

[1]It is not clear to whom the August 13, 2008 letter was sent.

2008.  About two months later, on February 11, 2009, a Scotty's employee suffered an on-the-job injury.  Had New Hampshire not cancelled the policy, the injury would have fallen within the policy period.

Aggrieved by the denial of coverage, Scotty's filed a Complaint on February 15, 2011, in the Circuit Court of the First Judicial District of Hinds County, Mississippi.  Scotty's sued PSI, PSI employees Copeland and Lisa Johnston, PSI President George Burnett, Appalachian Underwriters, Inc., American Home, and New Hampshire asserting claims for breach of contract and misrepresentation.  On June 6, 2011, Defendants removed the case to this Court invoking diversity jurisdiction because the non-diverse defendants—PSI, Burnett, and Johnston—were improperly joined.  After the close of all discovery, Scotty's filed its motion to remand on June 22, 2012.  An extended briefing period followed, and the Court is now prepared to rule.

II.     Standard

Defendants premise federal jurisdiction on 28 U.S.C. § 1332, under which the district courts have jurisdiction over civil actions between "citizens of different States."  28 U.S.C. § 1332(a)(1).  The diversity statute requires complete diversity between all named plaintiffs and all named defendants.  *E.g.*, *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005).  The fraudulent or improper joinder rule "is a narrow exception to the rule that diversity jurisdiction requires complete diversity."  *Smallwood v. Ill. Cent. R.R. Co.*, 352 F.3d 220, 222 (5th Cir. 2003).  To that end, "[t]he burden of demonstrating improper joinder is a heavy one and is placed upon the party seeking removal."  *Lorenz v. Tex. Workforce Comm'n*, 211 F. App'x 242, 245 (5th Cir. 2006) (citing *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005)).  In evaluating a claim of improper joinder, the "appropriate test is whether there is any reasonable basis for

predicting the plaintiffs might be able to recover against . . . the in-state defendant." *Jones v. Gen. Motors Corp.*, No. 3:06cv608-DPJ-JCS, 2007 WL 1610478, at *1 (S.D. Miss. June 1, 2007) (quoting *Love v. Ford Motor Co.*, 212 F. App'x 292, 294 (5th Cir. 2006)). But "[a] 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 n.9 (5th Cir. 2004) (en banc) (quoting *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000)).

A district court should ordinarily resolve an improper joinder claim by conducting Rule 12(b)(6)-type analysis. *Smallwood*, 385 F.3d at 573. The Court "must then evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff." *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). Similarly, the Court must resolve all ambiguities in controlling state law in the plaintiff's favor. *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003) (citations omitted). But the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to show that the defendant was not improperly joined." *Randle v. Smithkline Beecham Corp.*, 338 F. Supp. 2d 704, 708 (S.D. Miss. 2004) (citing *Badon*, 224 F.3d at 392–93). Finally, "there are cases, hopefully few in number, in which the plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder." *Smallwood*, 385 F.3d at 573. In such cases, the district court has the discretion to "pierce the pleadings" and conduct a summary inquiry. *Id.*

III.    Analysis

As an initial matter, the Court concludes that a summary inquiry is appropriate.

Defendants are certainly correct that Plaintiff's claims against the non-diverse defendants would fail under a Rule 12(b)(6)-type review for lack of specific factual allegations against any particular defendant. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). But a finding of improper joinder may not be premised on a pleading deficiency that is common to all defendants. *See Smallwood*, 385 F.3d at 575. Moreover, the parties have conducted and completed all discovery, which negates one of the policy reasons for applying a Rule 12(b)(6)-type review. *See Smallwood*, 385 F.3d at 573. Finally, the Complaint omits discrete facts that should be considered in a summary inquiry. *Id*.

The next task is to determine what Scotty's actually pleaded as to non-diverse defendants Lisa Johnston, George Burnett, and PSI. Viewing the allegations of the Complaint in the light most favorable to Scotty's, it asserts—as to all defendants—claims for breach of contract and misrepresentation. Significantly, the Complaint fails to allege negligence or any of the failure-to-procure or failure-to-advise type claims Scotty's relies so heavily upon in support of its motion to remand. Those claims are not, therefore, before the Court and will not be further considered. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995) (explaining that in improper joinder analysis, court need not consider "whether a claim has been stated against the nondiverse defendant under a legal theory not alleged in the state court complaint"). Thus, the question is whether there is a reasonable basis to predict success in a breach-of-contract or misrepresentation claim against the non-diverse defendants.

A.   Breach of Contract

In its opening brief, Scotty's asserts that the non-diverse defendants "breached their contract with the Plaintiff . . . in allowing the Plaintiff's worker's compensation coverage to cancel without notifying the Plaintiff."  Pl.'s Mem. [162] at 3.  Defendants respond that Scotty's does not allege, and has not produced, "any contract other than the two insurance policies" at issue.  Defs.' Mem. [165] at 31.  Defendants note that the non-diverse defendants are not parties to those contracts and cannot be held to them.

Scotty's ignores this argument in its rebuttal, appearing to abandon the breach-of-contract claim against the non-diverse defendants.  In any event, Defendants' arguments appear meritorious.  *See Johnson v. Rimes*, No. 3:12CV331TSL-MTP, 2012 WL 3889124, at *1 (S.D. Miss. July 12, 2012) ("Mississippi law is clear: an agent of a disclosed principal is not a party to his principal's contract and cannot be liable for its breach." (citations omitted)).  Thus, there is no reasonable basis to predict that Scotty's would prevail against the non-diverse defendants on a breach-of-contract claim.

B.   Misrepresentation

Scotty's misrepresentation claim is set forth in paragraph seven of the Complaint and represents the only substantive averment directed towards the non-diverse defendants.  It reads in its entirety as follows:  "[I]t was represented to the Plaintiff by the agency through its employees that Plaintiff had Workers Compensation coverage in effect at the time of the above accident."  Compl. [1-1] ¶ 7.  This averment fails to identify the specific representations or the individuals who made them.  Scotty's initial memorandum in support of remand is no better.  There, Plaintiff merely reiterates the vague assertion found in paragraph seven of the Complaint.  Pl.'s Mem.

[162] at 8.

It is not until Scotty's rebuttal that it finally explains the factual basis for the misrepresentation claim. In it, Scotty's points to statements made by Cathy Copeland which allegedly caused Vowell to believe he was purchasing insurance for one year with PSI. Pl.'s Rebuttal [171] (citing Vowell Dep. 142). Looking at the deposition, Vowell testified that when he paid the initial estimate for the New Hampshire policy, Copeland told him he "was paying it in full for a year." Defs.' Resp. [164] Ex. A, Vowell Dep. 143. Vowell denied any conversations with anyone else at PSI "regarding that [Scotty's] would have had coverage at" the time of the work-place injury. *Id*. 146. Thus, the focus is on Copeland's initial comments. And though she is a diverse defendant, her statements could bind non-diverse defendant PSI if those statements amount to legal misrepresentations.[2]

Mississippi recognizes two species of misrepresentation claims: "fraudulent (or intentional) misrepresentation and negligent misrepresentation." *Spragins v. Sunburst Bank*, 605 So. 2d 777, 780 (Miss. 1992) (citation omitted). The Complaint fails to specify which theory Scotty's pursues, but the briefing on the motion to remand clarifies that Scotty's asserts negligent misrepresentations and omissions. Pl.'s Mem. [162] at 3; Pl.'s Rebuttal [171] at 4. To recover on a claim based on negligent misrepresentation, Scotty's must prove:

> (1) a misrepresentation or omission of a fact; (2) that the representation is material or significant; (3) that the person charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons; (4) that [Scotty's] reasonably relied upon the . . . misrepresentation or omission; [and] (5) that [Scotty's] suffered damages as a direct and proximate result of such reasonable reliance.

---

[2]The record also reflects post-cancellation statements by Johnston, but those could not form the basis of a misrepresentation claim for lack of reliance or causation. *See discussion infra*.

*Spragins*, 605 So. 2d at 780 (citations omitted). Here, Scotty's argues that the non-diverse defendants made negligent misrepresentations and negligently omitted facts by failing to advise Scotty's that its policy could be cancelled. Only the former appears in the Complaint; the latter is not before the Court.[3]

Defendants make several plausible arguments against the misrepresentation claim, but the Court will focus on two: the lack of reasonable reliance and causation. First, Scotty's cannot show reasonable reliance on Copeland's pre-contract statement that payment was made in full. After those statements were allegedly made, Scotty's learned that the audit showed a shortfall, and it received notices that the policy would be cancelled for non-payment. In addition, Vowell testified that after the audit—but well before cancellation—Copeland informed him that "if [he] would send a check in, write a letter for the good faith, that [he] could *try to work it out* with them." Vowell Dep. 145 (emphasis added); *see also* Defs.' Resp. [164] Ex. I, Vowell Letter. In light of these post-audit developments and Copeland's advice to "try to work it out," Scotty's cannot have reasonably relied on Copeland's pre-audit statement that the policy was paid in full.

Second, there remains a causal disconnect between Copeland's representations and the cancellation of the policy. The undisputed summary evidence in this case establishes that

---

[3]Even if pleaded, there is no evidence of a fiduciary relationship that would give rise to an omission claim. *See Frye v. Am. Gen. Fin., Inc.*, 307 F. Sup. 2d 836, 842 (S.D. Miss. 2004) (citation omitted) (holding that under Mississippi law, "claims for fraudulent and negligent 'omissions' are . . . dependent on the existence of a fiduciary or other confidential relationship."); *see also Grand Legacy, LLP v. Gant*, 66 So. 3d 137, 145 (Miss. 2011) (explaining that silence may be fraud where it "relate[s] to a material fact or matter known to the party and as to which it is his legal duty to communicate to the other contracting party") (internal quotations and citation omitted); *Allstate Life Ins. Co. v. Parnell*, 292 F. App'x 264, 271 (5th Cir. 2008) ("Reliance on the advice of an insurance agent during the purchase of insurance does not create a fiduciary relationship, even where the parties have a prior social relationship." (citing *Booker v. Am. Gen. Life & Acc. Ins. Co.*, 257 F. Supp. 2d 850, 860–62 (S.D. Miss. 2003))).

Scotty's, through Vowell's wife Nita, received the premium notices and chose not to pay them because she believed Vowell moved Scotty's workers-compensation coverage to another company. In other words, she chose to ignore the notices not because Copeland led Scotty's to believe the original coverage was still in place, but because she believed her husband had moved the coverage altogether. Absent reasonable reliance or a causal connection, there exists no reasonable basis for predicting success on a negligent-misrepresentation claim against the non-diverse defendants.[4]

IV.     Conclusion

The Court has considered all the parties' arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, Scotty's Motion to Remand [161] is denied. The parties are instructed to contact the magistrate judge to set the case for a status conference.

**SO ORDERED AND ADJUDGED** this the 5th day of February, 2013.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[4] The lack of causation and Copeland's pre-cancellation advice to "try to work it out" would also negate the negligent-omission claim had such a claim been pleaded.

9