UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

SCOTTY'S RECYCLING, LLC                                                               PLAINTIFF

v.                                                          CIVIL ACTION NO. 3:11cv341-DPJ-FKB

PHILADELPHIA-SECURITY                                                              DEFENDANTS
INSURANCE, et al.

ORDER

This diversity case is before the Court on a number of dispositive motions: Defendants George Burnett, Lisa Johnston, and Philadelphia-Security Insurance's Motion for Judgment of Dismissal with Prejudice [179]; Defendant Cathy Copeland's Motion for Summary Judgment [180]; Defendants American Home Assurance Co. and New Hampshire Insurance Company's Motion for Summary Judgment [194]; and Defendant Appalachian Underwriters, Inc.'s Motion for Summary Judgment [197]. Because the Court concludes that there are no genuine issues of material fact for trial, the motions are all granted.

I.      Facts and Procedural History

In March 2007, Scotty Vowell contacted his insurance agent Cathy Copeland at Philadelphia-Security Insurance ("PSI") about procuring worker's-compensation-insurance coverage for his limited-liability company, Plaintiff Scotty's Recycling, LLC ("Scotty's"). PSI procured coverage from Defendant American Home Assurance Co. ("American Home") for the policy period running April 2007 to April 2008 and from Defendant New Hampshire Insurance Company ("New Hampshire") for the policy period from April 2008 to April 2009. Both American Home and New Hampshire are members of the AIG family of companies, and the New Hampshire policy represented a renewal of the American Home policy. Renewal Confirmation

[194-7]. Each policy, at its inception, required Scotty's to pay an estimated annual premium and contained a provision for determining the final premium once the policy terminated. In general terms, the premiums for the policies were determined by multiplying a rate that corresponded to the classification of Scotty's operations, by the company's total payroll and other remuneration paid during the policy periods.

After the American Home policy expired in April 2008, American Home conducted an audit and discovered that Scotty's payroll for the policy period was greater than initially estimated. American Home recalculated the premium based on its audit, issued an endorsement to the policy reflecting the revised annual premium, and billed Scotty's for the additional sum. New Hampshire learned of the audit and, on July 22, 2008, it likewise issued an adjusted premium endorsement for the then in-force 2008–2009 policy. New Hampshire invoiced Scotty's for the balance due as a result of the audit. In an August 13, 2008 letter, Vowell disputed the results of the American Home audit and its effect on the premiums for both policies but, "[a]s a gesture of good faith[,]" paid "$5,000 towards [the] balance due on the 2007–2008 audit . . . and will await the outcome of this dispute before paying any remaining balance due the company." Vowell Letter [194-9].

Scotty's made no payments on the disputed balance due on the New Hampshire policy, despite the fact that New Hampshire mailed invoices to Scotty's in September and October 2008. These invoices advised Scotty's that the policy would "be subject to cancellation" if he failed to make payment. Invoices [194-11]. Significantly, Vowell's wife, Nita, who was responsible for opening Scotty's mail and paying the bills, testified that she received the invoices from New

Hampshire but did not pay the premiums because she believed her husband had moved Scotty's worker's-compensation coverage to another company.

Having received no further premiums on the policy, New Hampshire mailed a Notice of Cancellation of Policy to Scotty's via registered mail on November 5, 2008, pursuant to section 71-3-77 of the Mississippi Code.  The notice explained that the New Hampshire policy "will cease on" December 12, 2008, and that "[t]he reason for cancellation is non-payment of premium."  Notice [194-5].  On December 21, 2008, New Hampshire mailed Scotty's an endorsement cancelling the coverage effective December 12, 2008.  Scotty's apparently did not replace the coverage, and about two months later, on February 11, 2009, a Scotty's employee suffered an on-the-job injury.  Had New Hampshire not cancelled the policy, the injury would have fallen within the policy period.

Aggrieved by New Hampshire's denial of coverage for Scotty's worker's-compensation claim, Scotty's filed a Complaint on February 15, 2011, in the Circuit Court of the First Judicial District of Hinds County, Mississippi.  Scotty's sued PSI, PSI employees Copeland and Lisa Johnston, PSI President George Burnett, Appalachian Underwriters, Inc., American Home, and New Hampshire, asserting claims for breach of contract and misrepresentation.  On June 6, 2011, Defendants removed the case to this Court invoking diversity jurisdiction, asserting that the non-diverse defendants—PSI, Burnett, and Johnston—were improperly joined.  After the close of all discovery, Scotty's filed a motion to remand [161], which the Court denied [178].

In its order on the motion to remand, the Court concluded that Scotty's had no reasonable possibility of recovery against the non-diverse defendants and therefore disregarded their citizenship for purposes of assessing subject-matter jurisdiction.  Defendants filed the now-

3

pending dispositive motions thereafter. The motions have been fully briefed, and the Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted).

III.     Analysis

    A.     Defendants George Burnett, Lisa Johnston, and PSI's Motion for Entry of Judgment of Dismissal with Prejudice[1]

In its Order denying the motion to remand, the Court concluded that "there is no reasonable basis to predict that Scotty's would prevail against the non-diverse defendants on a breach-of-contract claim" and that "there exists no reasonable basis for predicting success on a negligent-misrepresentation claim against the non-diverse defendants." Order [178] at 6, 9. Once a finding has been made on a motion to remand in an improper-joinder case, it is customary and appropriate for the Court to dismiss the claims against the improperly-joined non-diverse defendants. *E.g.*, *Johnson v. Rimes*, 890 F. Supp. 2d 743, 747 (S.D. Miss. 2012) (Lee, J.) (denying motion to remand in improper joinder case and granting non-diverse defendant's motion to dismiss). Indeed, failure to dismiss the non-diverse defendants would divest the Court of subject-matter jurisdiction.

Scotty's only real response is that these Defendants are vicariously liable for the acts of Defendant Copeland, but she too will be dismissed consistent with the Court's prior ruling on the motion to remand. The claims against Burnett, Johnston, and PSI are due to be, and hereby are, dismissed.

---

[1] The non-diverse defendants do not specify what rule their motion arises under, although the legal basis for their motion appears to be that Plaintiff fails to state a claim against the non-diverse defendants. Based on the procedural posture of the case and the fact that the non-diverse defendants' motion was filed following the close of discovery, the Court construes the motion as one for summary judgment under Rule 56.

B.        Defendant Cathy Copeland's Motion for Summary Judgment

Plaintiff apparently concedes its breach-of-contract claim against Copeland and asserts only a negligent misrepresentation claim against her. That claim is premised on statements Copeland made that allegedly caused Vowell to believe he was purchasing paid-in-full coverage for the entire policy period of the New Hampshire policy. Specifically, Vowell testified that when he paid the initial estimated premium for the New Hampshire policy, Copeland told him he "was paying it in full for a year." Vowell Dep. [180-2] at 143. Scotty's asserts that Copeland also failed to disclose the fact "that New Hampshire had the right to raise the premium during the pendency of the policy and that the increased premium had to be paid during the term of the policy to maintain insurance coverage." Pl.'s Resp. [189] at 2–3.

Based on these assertions, Scotty's averred in its Complaint that "it was represented to the Plaintiff . . . that Plaintiff had Worker's Compensation coverage in effect at the time of the . . . accident." Compl. [1-1] ¶ 7. In other words, Copeland's pre-purchase statements duped Scotty's into believing it had coverage at the time of the accident, leaving Scotty's uninsured.

As explained in the Court's order denying remand, to recover against Copeland on the negligent misrepresentation claim, Scotty's must prove:

> (1) a misrepresentation or omission of a fact; (2) that the representation is material or significant; (3) that [Copeland] failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons; (4) that [Scotty's] reasonably relied upon the . . . misrepresentation or omission; [and] (5) that [Scotty's] suffered damages as a direct and proximate result of such reasonable reliance.

6

*Spragins v. Sunburst Bank*, 605 So. 2d 777, 780 (Miss. 1992) (citations omitted). As with the claims against the non-diverse defendants, Scotty's claim against Copeland fails for lack of reasonable reliance and proximate causation.

First, Scotty's cannot show reasonable reliance on Copeland's pre-contract statement that payment was made in full or her failure to disclose the fact that New Hampshire required an additional premium during the life of the policy to keep it in force.[2] After the statement and alleged omission occurred, Scotty's learned that the American Home audit showed a shortfall, which New Hampshire relied upon to adjust the premium owed on its policy, and Scotty's received notices that the New Hampshire policy would be cancelled for non-payment of the additional premium. Vowell also testified that after the audit—but well before cancellation—Copeland informed him that "if [he] would send a check in, write a letter for the good faith, that [he] could *try to work it out with* them." Vowell Dep. 145 (emphasis added). And Scotty's actually received a notice of cancellation that it apparently ignored.

As stated earlier, the claim against Copeland is that her misrepresentations at the time Scotty's purchased the policies led it to believe coverage existed in February 2009 when in fact it did not. This left Scotty's exposed to its employee's claim without the benefit of insurance. But

---

[2]Copeland's alleged omissions are not actionable for the additional reason that Scotty's has not established a fiduciary relationship that would give rise to a duty to disclose. *See Allstate Life Ins. Co. v. Parnell*, 292 F. App'x 264, 271 (5th Cir. 2008); *Frye v. Am. Gen. Fin., Inc.*, 307 F. Supp. 2d 836, 842 (S.D. Miss. 2004). Plaintiff contends that the testimony of its expert witness, Eric Elam, establishes that PSI, acting consistent with "customary and standard practice" in the insurance industry, should have notified Scotty's that the New Hampshire policy would be cancelled for non-payment. Elam Dep. [189-3] at 239. But under Mississippi law, "whether a particular relationship gives rise to a fiduciary duty is a question of law," *Parnell*, 292 F. App'x at 271, and "an expert may never render conclusions of law," *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009) (citation omitted). Elam's opinion cannot change the Court's legal conclusion that no fiduciary relationship existed between the parties.

given the post-audit history, no reasonable juror could find that Scotty's reasonably relied on Copeland's pre-purchase comments to conclude that coverage existed after it was cancelled.

Second, even if Scotty's reliance had been reasonable, it cannot show that its damages were sustained "as a direct and proximate result" thereof. The undisputed evidence establishes that Scotty's, through Vowell's wife Nita, received the premium notices and chose not to pay them because she believed Vowell moved Scotty's worker's-compensation coverage to another company. In other words, she chose to ignore the notices not because Copeland led Scotty's to believe the original coverage was still in place, but because she believed her husband had moved the coverage altogether. *Cf. Entrican v. Ming*, 962 So. 2d 28, 36 (Miss. 2007) ("If the act complained of is only a remote cause, superseded by an independent, efficient intervening cause that leads in unbroken sequence to the injury, the original negligent act is not a proximate, but a remote, cause." (citing *Robison v. McDowell*, 247 So. 2d 686, 689 (Miss. 1971) (internal quotation marks omitted)). Because there is no genuine issue of material fact as to reasonable reliance or proximate cause, Scotty's claim against Copeland fails. Copeland's motion for summary judgment is granted.

    C.    Defendants American Home Assurance Co. and New Hampshire Insurance Company's Motion for Summary Judgment

As to American Home and New Hampshire, Plaintiff appears to have abandoned its negligent-misrepresentation claim and proceeds solely on its claim for breach of contract. *See* Pl.'s Resp. [201] (failing to address Defendants' arguments on the misrepresentation claim and focusing entirely on arguments related to the propriety of the cancellation of the New Hampshire policy). And as to American Home, its policy expired nearly a year before the February 2009

accident.  There is no suggestion that it breached its contract with Scotty's, so American Home is entitled to summary judgment.

That leaves the breach-of-contract claim against New Hampshire, which accounts for the vast majority of Scotty's attention in its response.  Under Mississippi law, the interpretation of an insurance policy's language presents a question of law.  *Lewis v. Allstate Ins. Co.*, 730 So. 2d 65, 68 (Miss. 1998).  When examining an insurance contract, the Court should "read the policy as a whole, considering all the relevant portions together and, whenever possible, should give operable effect to every provision in order to reach a reasonable overall result."  *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (Miss. 1998).  The Court must give effect to the plain meaning of an insurance policy's clear and unambiguous language.  *Robley v. Blue Cross/Blue Shield of Miss.*, 935 So. 2d 990, 996 (Miss. 2006).

Scotty's asserts that New Hampshire breached the policy when it added an endorsement to the policy that changed the estimated annual premium based on American Home's post-policy audit for three reasons:  (1) under the policy, premiums could be adjusted by endorsement only "if there was an improper classification," (2) premiums could be adjusted only after the policy period, not during the policy term, and (3) any premium adjustment could not have been based on American Home's audit.  Scotty's argues that these breaches "led directly to the policy's cancellation and exposed Scotty's to a compensation claim without insurance," thus making New Hampshire "responsible for the damages Scotty's suffered." Pl.'s Resp. [201] at 2.

There exists an apparent disconnect between these arguments and the allegations of the Complaint.  It is perhaps conceivable that Scotty's could have a cause of action related to the adjusted premiums.  But the Complaint makes no such claim.  Instead, Scotty's averred that New

9

Hampshire should have covered its employee's claim, and it seeks damages related to Scotty's exposure to that claim. *See* Compl. ¶¶ 6, 8–10. In other words, Scotty's claims are linked to the ineffectiveness of the cancellation.

On that point, New Hampshire argues, persuasively, that even if Scotty's is correct that New Hampshire improperly endorsed the policy to raise the premium based on a revised estimated premium basis, New Hampshire's ultimate cancellation of the policy—which led to Scotty's being uninsured at the time of its employee's injury—was proper under the policy and Mississippi law.

The policy unambiguously provided that New Hampshire "may cancel the policy" and placed no restrictions on permissible reasons for cancellation. New Hampshire Policy [194-4] at 25. And New Hampshire complied with Mississippi law by providing the notice required by section 71-3-77 of the Mississippi Code. New Hampshire acted within its contractual rights when it cancelled the policy, and Scotty's breach-of-contract claim therefore fails. New Hampshire is also entitled to summary judgment.[3]

D.   Defendant Appalachian Underwriters, Inc.'s Motion for Summary Judgment

Appalachian Underwriters, Inc. ("Appalachian") was the "wholesale broker" that placed Scotty's coverage with American Home and New Hampshire. Am. Home 30(b)(6) Dep. [197-23] at 34. There is no evidence of any contract between Scotty's and Appalachian, Vowell does

---

[3]This conclusion is likewise dispositive of Scotty's claim for breach of the covenant of good faith and fair dealing, assuming Scotty's has asserted such a claim. *See* Compl. [1-1]; *Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 987 (explaining that to succeed on a claim for breach of the covenant of good faith and fair dealing, a plaintiff must show "some conscious wrongdoing 'because of dishonest purpose or moral obliquity.'" (citing *Bailey v. Bailey*, 724 So. 2d 335, 338 (Miss. 1998)).

not recall ever discussing his worker's-compensation policies with anyone from Appalachian, Vowell Dep. 54, and Appalachian's corporate representative testified that Appalachian has no direct communication with insureds whose coverage Appalachian places. Am. Home 30(b)(6) Dep. at 35. On these facts, Scotty's cannot succeed on a breach-of-contract or negligent-misrepresentation claim against Appalachian.

Scotty's asserts, however, that Appalachian's conduct—or lack thereof—with regard to Plaintiff's lapse in coverage could be found to have been negligent. Pl.'s Resp. [207] at 2 (citing *Fonte v. Audubon Ins. Co.*, 8 So. 3d 161 (Miss. 2009)). Aside from the fact that Scotty's points to no record evidence to support its theory of agency or of Appalachian's alleged duty to Scotty's, *see Chevis v. Miss. Farm Bureau Mut. Ins. Co.*, 76 So. 3d 187, 195 (Miss. Ct. App. 2011), the Complaint contains no claims for negligence other than the negligent misrepresentation claim. Scotty's never moved to amend its Complaint, and it cannot add new theories of liability at this stage. *See United States ex rel. DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2012).

Finally, the Court notes that Scotty's response to Appalachian's motion effectively concedes the motion, asserting that "Plaintiff will not oppose the [m]otion . . . provided that the remaining Defendants will be bound by [the summary j]udgment and be precluded from raising any culpability of [Appalachian] at trial." Pl.'s Resp. [207] at 4. The motion for summary judgment is granted.

IV.  Conclusion

The Court has considered all the parties' arguments. Those not addressed would not have changed the result. For the foregoing reasons, Defendants' Motion for Entry of Judgment of

Dismissal with Prejudice [179] is granted; Copeland's Motion for Summary Judgment [180] is granted; American Home and New Hampshire's motion for summary judgment [194] is granted; and Appalachian's Motion for Summary Judgment [197] is granted.  A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 9th day of September, 2013.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE